On Application for Rehearing.

PER CURIAM.
This court’s opinion of May 9, 2008, is withdrawn, and the following is substituted therefor.
Brenda Pepper appeals from a judgment entered against her in an ejectment action in the Limestone Circuit Court (“the trial court”). On March 18, 2006, Pepper entered into a mortgage agreement with Redstone, Federal Credit Union (“Red-stone”). The mortgage secured a line of credit and encumbered Pepper’s house and real property (“the property”), which are situated in Limestone County. The mortgage agreement provided that, upon any default by Pepper, the mortgage would be subject to foreclosure and Redstone would *687 have the right to sell the property by auction.
Pepper subsequently defaulted on the terms of the mortgage agreement, and Redstone foreclosed on the mortgage. Pursuant to the mortgage agreement, Redstone sold the property at an auction on November 9, 2006. Dorothy Bentley and Michael Bentley, mother and son, purchased the property at the sale and received a foreclosure deed. Other than the foreclosure deed, the record on appeal does not include any documents relating to the auction or the foreclosure proceedings. On November 10, 2006, the Bentleys served Pepper with a notice to vacate the property within 10 days. Pepper did not do so, and on February 2, 2007, the Bent-leys filed an action for ejectment pursuant to § 6-6-280, Ala.Code 1975.
Pepper answered the Bentleys’ complaint on March 2, 2007. On March 6, 2007, the trial court set the case for trial on March 15, 2007. Per the Bentleys’ motion, the trial court continued the trial setting to March 29, 2007.
On March 16, 2007, Pepper’s attorney filed a motion in which he requested the trial court to appoint a guardian ad litem pursuant to Rule 17(c), Ala. R. Civ. P., to protect Pepper’s interests. In the motion, Pepper’s attorney stated as follows:
“1. That based upon his interactions with his client, that said person is not capable of understanding the proceedings and the direct implications and consequences of her decisions regarding this matter.
“2. That based upon his conversations with her previous counsels of record, that counsel has learned that said person has repeatedly acted contrary to her attorney’s advice and repeatedly takes actions not in her best interest.
“3. That upon investigation, counsel for the Defendant [Pepper] learned that his client has been previously diagnosed with, and treated for, a mental impairment which seriously affected her corm petenee and her ability to make sound, reasonable decisions.
“4. That after investigation and repeated interviews with his client; counsel reasonably believes that his representation of his client has been, and will continue to be, compromised by her mental state, and that he cannot respect his client’s wishes and simultaneously ■ defend her interests within the bounds of the law.
“5. That after due consideration, consultation with his law partners, supervisors, and the Alabama State Bar, counsel reasonably believes that the only way he can effectively and ethically continue representation of this client will be to proceed under Alabama Rules of Professional Conduct Rule 1.14, and Alabama. Rules of Civil Procedure Rule 17(c), and respectfully requests that this Honorable Court appoint a guardian for the purposes of this trial and to evaluate his client’s true mental state.
“6. That counsel shows unto, this Honorable Court that he has not informed his client of his decision to request a guardian, as his client has expressed great distrust of the legal system and mental-health-treatment facilities, and as such has specifically requested that counsel not request a guardian or raise any defense based on mental infirmity. However, for the reasons stated above, counsel reasonably believes this is the only way to fairly and adequately proceed with representation.”
Pepper’s attorney requested that the trial court appoint a guardian ad litem to represent Pepper, order an independent evaluation of Pepper’s mental state, and- grant *688 Pepper leave to amend her answer to include defenses related to her mental capacity. Pepper’s attorney also sought leave for Pepper to assert counterclaims and cross-claims related to her mental capacity. Pepper’s attorney did not expressly request a hearing on his motion.
The trial court did not hold a hearing on the motion for the appointment of a guardian ad litem, and it denied the motion on March 27, 2007. Pepper and Michael Bentley testified at the bench trial on March 29, 2007. The mortgage agreement, the foreclosure deed, and .the request to vacate were admitted into the record. Michael Bentley testified that he and his mother had purchased the property and had advised Pepper to vacate it. He also testified that he believed the fair rental value of the property was between $450 and $550 per month. Upon cross-examination, Bentley admitted that he had never been inside the house and had estimated the rental value “off the top of [his] head.” Bentley testified that hé had incurred $2,000 in attorney fees in the action.
Pepper testified that she remembered receiving the notice to vacate. She also testified that she understood that Red-stone had foreclosed on the mortgage because she had not made payments on the line of credit; however, she subsequently testified that she had paid her debt on the first of every month. Most of Pepper’s testimony was unresponsive to her attorney’s questions. She did testify that the house was “in very bad shape.”
On March 30, 2007, the trial court entered a judgment finding that Pepper had retained possession of the property in derogation of the Bentleys’ rights and that the Bentleys were entitled to immediate possession. The trial court awarded damages in the amount of $2,500 and awarded an attorney fee in the amount of $2,000; The trial court ordered that Pepper immediately be ejected from the property and that the sheriff immediately undertake to peacefully transfer possession of the property to the Bentleys.
On April 2, 2007, Pepper filed a motion to stay the execution of the judgment pursuant to Rule 62(a), Ala. R. Civ. P, The trial court denied the motion that same day, stating simply: “For good cause this court determines no stay of execution per Ala. R. Civ. P. 62 is justified.” On April 30, 2007, Pepper filed a timely post-judgment motion under Rule 59, Ala. R. Civ. P., to alter, amend, or vacate the judgment or, in the alternative, for a new trial.[1] The trial court did not rule on that motion, and, pursuant to Rule 59.1, Ala. R. Civ. P., it was denied by operation of law on July 29, 2007. Pepper filed a timely notice of appeal to our supreme court; our supreme court transferred the case to this court due to a lack of subject-matter jurisdiction. The Bentleys have not filed a brief on appeal.
Pepper raises several arguments on appeal; the first two relate to her attorney’s request for a guardian ad litem pursuant to Rule 17(c), Ala. R. Civ. P. First, Pepper argues that the trial court erred in failing to hold a hearing on her attorney’s motion. Second, Pepper argues that the trial court erred in failing to appoint a guardian ad litem to protect her interests in the action.
*689 Rule 17(c) provides, in relevant part: “The court shall appoint a guardian ad litem (1) for a minor defendant, or (2) for an incompetent person not otherwise represented in an action and may make any other orders it deems proper for the protection of the minor or incompetent person.”[2] Although a trial court, under Rule 17(c), must appoint a guardian ad litem to represent a minor defendant, see Ridgeway v. Strickling, 442 So.2d 106 (Ala.Civ.App.1983), it need only appoint a guardian ad litem to represent an incompetent person when that person is “not otherwise represented” in the action. See, e.g., Williams v. Faucett, 579 So.2d 572, 579 (Ala.1989) (“A review of the record indicates that James was diligently represented by able counsel from the béginning of the case through this appeal. Rule 17(c), [Ala.] R. Civ. P., did not impose on the trial court a duty to appoint a guardian ad litem.”); Meriwether v. Brown, 390 So.2d 1042, 1043 (Ala.1980) (“[A] close reading of the record indicates the Appellant was diligently represented by counsel, from the inception of this suit through this appeal. Consequently, in keeping with Rule 17(c), the trial court was under no duty to appoint a guardian ad litem in the first place.”); see also Ridgeway, supra (in dicta).
In Helton v. Helton, 362 So.2d 257, 259 (Ala.Civ.App.1978), a case involving a divorce proceeding, this court noted that an adjudication of incompetency is not necessary to invoke Rule 17(c). In so holding, this court stated:
“In cases such as the one before us it is sufficient that the trial court is apprised of the possibility that a party is an incompetent by the pleadings or otherwise. Such notice enables the court to appoint a guardian ad litem to protect the alleged incompetent’s interests. In this instance the trial court was apprised prior to the divorce hearing that the husband might be mentally incompetent and in need of legal representation. Accordingly, the trial court followed the mandate of Rule 17(c) and appointed an attorney to serve as the husband’s counsel. Since the divorce was not sought on the grounds of insanity the court was under no compulsion to officially adjudge the husband mentally incompetent prior to rendering a judgment....”
Id. (emphasis added). This court went on to explain that any other steps a trial court may or may not take under Rule 17(c) to protect the interests of an incompetent person are within the trial court’s discretion. “Under Rule 17(c) the court may also take any additional steps it deems proper in an effort to protect the incompetent person. Such steps are, however, within the court’s discretion and we will not reverse the court unless' there is an abuse of such discretion.” Id.; see also Meriwether, 390 So.2d at 1043.
According to Pepper, once an allegation of incompetency is raised, the trial court has a duty to make a determination regarding the party’s competence and to appoint a guardian ad litem if the party is, in fact, incompetent. Under Pepper’s formulation, this duty to make a determination requires the trial court to hold a hearing on the issue of the party’s competence to defend or prosecute the action.
This court has held that, under the Due Process Clause of the Fifth Amendment to *690 the United States Constitution, which is extended to the states by the Fourteenth Amendment, an individual alleged to be incompetent is entitled to a hearing before a trial court may find him or her incompetent and appoint a guardian ad litem to represent his or her interests. Wild v. Wild, 940 So.2d 1037, 1040 (Ala.Civ.App. 2006). However, we can find no Alabama statute, rule, or case requiring a trial court to conduct a hearing before it declines to appoint a guardian ad litem.
Pepper admits that no Alabama case directly addresses this issue or imposes such a requirement. She therefore urges us to look to the law of the federal courts and of other states to find and impose such a duty. Under the specific circumstances of this case, however, we do not believe it is necessary to look to the law of other jurisdictions in order to reach a decision on this issue.
Pepper’s attorney did not submit any evidence to the trial court to support his motion to appoint a guardian ad litem. He did not submit an affidavit detailing his own experiences with Pepper; many of the allegations in his motion were based on apparent hearsay; and many of his allegations about Pepper’s mental state were nebulous, at best. Also, Pepper’s attorney did not expressly request the trial court to conduct a hearing on his motion.
The record shows that Pepper was represented by counsel throughout the ejectment action and her appeal. See Rule 17(c) (“The court shall appoint a guardian ad litem ... for an incompetent person not otherwise represented in an action....” (emphasis added)). As in Helton, supra, the trial court in this case complied with Rule 17(c) by ensuring that Pepper was represented by counsel. As in Helton, the trial court was not required to make an official adjudication regarding Pepper’s competence. See Helton, 362 So.2d at 259.[3] Furthermore, as in Helton, the trial court was vested with discretion regarding whether to take additional steps in order to protect Pepper’s interests. Id. Based on the circumstances presented to us in this case, we will not interfere with that discretion by requiring the trial court to hold a hearing on the motion to appoint a guardian ad litem.
Furthermore, any defenses that Pepper could raise regarding her mental capacity would relate to the validity and enforceability of the underlying mortgage and indebtedness, not to the Bentleys’ right of possession based upon the foreclosure deed. Therefore, a hearing regarding whether Pepper should have been granted leave to amend her answer to assert additional defenses based on her mental capacity would be unavailing. See Palmer v-Resolution Trust Corp., 613 So.2d 373, 375 (Ala.1993) (“The defenses raised by the Palmers concern the RTC’s right to foreclose on its mortgage and are based on alleged irregularities in the underlying note that the Palmers argue made the note void and unenforceable. However, the RTC, as holder of the foreclosure deed, has full legal title, subject only to the right of redemption, ... and has a right to *691 immediate possession of the property .... The Palmers’ ‘affirmative defenses,’ which challenge the underlying note, do not defeat the legal title created by the foreclosure deed and the right of the holder of the foreclosure deed to possession of the property at this time.”).
Pepper argues that, just as the Due Process Clause requires a hearing before a guardian ad litem may be appointed, see Wild, supra, it also requires a hearing before an appointment may be denied. However, in Wild, this court based its decision on the proposition that when a guardian ad litem is appointed to represent a party in an action, the appointment adversely affects the protected liberty interests of that party, i.e., the party’s reputation and the party’s power to control the action. Wild, 940 So.2d at 1039-40. Contrary to Pepper’s assertion, we do not believe that the converse is true. A trial court’s refusal to appoint a guardian ad litem upon allegations of incompetence does not adversely affect the party’s reputation and, in fact, preserves his or her right to control the action." Accordingly, we do not believe that the Due Process Clause of the Fifth Amendment to the United States Constitution required the trial court in this case to conduct a hearing before declining to appoint a guardian ad litem to represent an allegedly incompetent party under Rule 17(c). Based on the foregoing, we cannot say that the trial court exceeded its discretion by not holding a hearing on the motion to appoint a guardian ad litem.
Regarding whether the trial court erred in failing to appoint a guardian ad litem to protect Pepper’s interests, we likewise find that the trial court did not exceed its discretion. In her argument on this issue, Pepper relies upon many cases from the federal courts and from other states, which are not binding authority. Pepper also cites Wipperman v. Wipper-man, 491 So.2d 977, 978 (Ala.Civ.App. 1986), in,which this court affirmed a trial court’s decision not to set aside an earlier judgment based on a party’s postjudgment argument that the appointment of a guardian ad litem to represent her was erroneous. In Wipperman, this court stated, “rather than charged with error, it appears that the. trial court should be commended for attempting to insure proper protection for a party whose second retained attorney has represented to the court that he is unable to understand and communicate with his client.” Id. However, this language is merely dicta and does not interfere with the trial court’s discretion in deciding whether to act in a like manner.
Pepper also argues that her counsel was placed in an ethical quandary by the trial court’s failure to appoint a guardian ad litem. Pepper cites Alabama Rule of Professional Conduct 1.14, which provides:
“(a) When a Ghent’s ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.
“(b) A lawyer may seek the appointment of a guardian or take other protective action with respect to a client, only when the lawyer reasonably believes that the client cannot adequately act in the client’s own interest.”
Pepper relies on the “Comparison With Former Alabama Code of Professional Responsibility” following ■ Rule 1.14, which quotes from former Disciplinary Rule “EC 7-12,” stating, in part: “ ‘[Ojbviously a lawyer cannot perform any act or make any decision which the law requires his client to perform or make, either acting for himself if competent, or by a duly consti *692 tuted representative if legally incompetent.’ ” According to Pepper, her counsel could not simultaneously comply with Pepper’s decisions and diligently represent her interests because Pepper’s decisions regarding the defense of the action conflicted with her interests.
However, Rule 1.14(a), Ala. R. Prof. Cond., requires only, as far as possible, that the lawyer maintain a normal client-lawyer relationship with the client. It is clear from the record that Pepper’s attorney did so. Rule 1.14(b), Ala. R. Prof. Cond., provides only that the “lawyer may seek the appointment of a guardian.” Pepper’s attorney did just that when he moved the trial court to appoint a guardian ad litem. Pepper’s attorney therefore satisfied the requirements of Rule 1.14, and when the trial court denied his motion to appoint a guardian ad litem, he was relieved of any ethical responsibility to act contrary to Pepper’s decisions.
As discussed above, Pepper was represented by counsel as required by Rule 17(c), and her attorney did not present any evidence to the trial court to support his allegations regarding her incompetence. Accordingly, there was no evidence upon which the trial court could have based a decision to appoint a guardian ad litem. The trial court was vested with discretion, and Pepper has not shown on appeal that the trial court exceeded that discretion in failing to appoint a guardian ad litem. See Helton, supra.
In her application for a rehearing, Pepper argues that our decision stands for the proposition that “an attorney’s presence will always satisfy the requirement for a guardian ad litem” and that, under our ruling, “Rule 17(c) will never require the appointment of a guardian ad litem in cases when an incompetent adult is represented by an attorney.” However, our decision does not, as Pepper implies, render proper every decision by a trial court not to appoint a guardian ad litem when the allegedly incompetent individual is represented by counsel. Under Rule 17(c), the determination whether to appoint a guardian ad litem when an allegedly incompetent individual is represented by counsel is within the trial court’s discretion. As Pepper notes, the appointment of a guardian ad litem in such situations is not required in every case. However, the decision is within the trial court’s discretion and may be challenged on appeal to determine whether the trial court has exceeded its discretion. In this case, Pepper has not shown that the trial court exceeded its discretion in deciding not to appoint a guardian ad litem to represent her interests or in failing to hold a hearing on her attorney’s motion to appoint a guardian ad litem.
Pepper next argues on appeal that the trial court erred by setting a trial date that did not allow sufficient time for the parties to prepare. Specifically, Pepper argues that the trial court’s order setting the trial date, which set a trial date that was within 60 days of the date the order was entered, violated Rule 40(a), Ala. R. Civ. P. That rule provides, in pertinent part:
“The trial of actions shall be set by entry on a trial docket or by written order at least sixty (60) days before the date set for trial, subject to the following exceptions: ... (7) where a shorter period of time is otherwise provided by law or these rules or agreed to by all of the parties.”
In Ex parte Medical Assurance Co., 862 So.2d 645, 649 (Ala.2008), a case involving a declaratory judgment, our supreme court explained:
“While Rule 40 vests considerable discretion in the trial court concerning the *693 setting of cases for trial, see Rüle 40(a), Committee Comments on 1973 Adoption, the rule sets 60 days as the mandatory minimum time within which parties to an action must have notice of a trial setting. As shown above, however, the 60-day requirement is subject to certain exceptions. Rule 40(a)(7) provides that the 60-day limit is not applicable ‘where a shorter period of time is otherwise provided by law or these rules or agreed to by all the parties.’ ”
In Meriwether, supra, the trial court appointed a guardian ad litem to represent the appellant one day before trial, upon her attorney’s request. 390 So.2d at 1043. On appeal, the appellant argued that the trial court had erred in failing to allow her guardian ad litem sufficient time to prepare his case; our supreme court found that argument to be without merit. Id. The court first noted that the appellant had been diligently represented by counsel, and therefore, it reasoned, the trial court was not obligated by Rule 17(c) to appoint a guardian ad litem. Id. The court then reasoned as follows:
“The Circuit Court received Appellant’s request for appointment of a guardian ad litem one day prior to the date the case was set for trial. Neither the attorney for Appellant nor the guardian ad litem himself ever requested a continuance in the matter. Furthermore, the record indicates that the guardian ad litem signed an acceptance and filed an answer while never objecting to the trial date of October 18, 1979.”
Id. (emphasis added). The supreme court found that the trial court had acted properly and had not exceeded its discretion. Id. at 1044.
The Bentleys requested and were granted a continuance of the original trial setting in this case. Neither the Bentleys nor Pepper objected to the second trial setting of March 29, 2007. They therefore implicitly agreed to that setting. See Rule 40(a)(7). Pepper and her attorney had notice of the trial and an opportunity to be heard, thus satisfying all due-process concerns. See Isler v. Isler, 870 So.2d 730 (Ala.Civ.App.2003). Additionally, as in Meriwether, Pepper’s counsel did not request a continuance at any time before the March. 29, 2007, trial. We will not presume that the trial court exceeded its discretion by conducting the trial on the appointed date when Pepper did not request additional time.
Next, Pepper argues on appeal that the trial court erred in not granting a stay of execution of its judgment pursuant to Rule 62(a), Ala. R. Civ. P. In Reynolds v. Henson, 277 Ala. 424,171 So.2d 240 (1965), our supreme court dismissed an appeal from a denial of a motion to stay the execution of a judgment. The supreme court stated: “There is no authority for the taking of an appeal as such from an order denying a motion to stay execution.” 277 Ala. at 425, 171 So.2d at 240. Accordingly, Pepper may not appeal from the trial court’s denial of her motion to stay execution of the judgment, and her appeal is due to be dismissed as to this issue.
Pepper also argues that the trial court’s judgment awarding damages to the Bentleys was not based on sufficient evidence. Pepper maintains that only the Bentleys’ lawyer actually stated an approximate rental value of the property. Pepper also cites her own testimony about the condition of the property. According to Pepper, no evidence in the record supports the trial court’s award of $2,500 in damages to the Bentleys.
: “Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination *694 will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.” American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 132 (Ala.1997). The trial transcript shows that the trial court heard the following testimony.
“[Counsel for the Bentleys]: Do you have an opinion what [the property’s] fair rental valué is on a monthly basis? “[Michael Bentley]: I’d say probably somewhere around $⅛50, $500, $550. I don’t know for sure. I don’t do any rental property.
[[Image here]]
“[Counsel for the Bentleys]: And you think it has a value on a monthly basis of between 450 and 550 dollars?
“[Bentley]: I’d say it does, yeah.
[[Image here]]
“[Counsel for Pepper]; ... [Y]ou stated that you felt the fair rental value of that property was about $400 to $500 a month. What did you base that on, sir? “[Bentley]: Well, see, I haven’t been in the house. That’s just a price I’m getting off the top of my head what you would pay for a house, say that size, that location. I mean, you know, I don’t rent property so I wouldn’t know. That’s just a rough estimate.”
(Emphasis added.)
The trial court, therefore, received ore tenus testimony regarding the rental value of the property upon which it could have based its award of damages. Pepper’s arguments on appeal relate solely to the weight of that evidence. This court does not reweigh evidence and “may not substitute its judgment for that of the trial court.” Somers v. McCoy, Ill So.2d 141, 142 (Ala.Civ.App.2000). Therefore, we cannot hold that the trial court exceeded its discretion in awarding damages to the Bentleys.
Finally, Pepper argues that the trial court’s award of an attorney fee to the Bentleys was in error because no statutory or other authority authorized such an award. Our supreme court has explained: “In Alabama, attorneys’ fees are recoverable only where authorized by statute,' when provided in a contract, or by special equity, such as in a proceeding where the efforts of an attorney create a fund out of which fees may be paid.” Ea-gerton v. Williams, 433 So.2d 436, 450 (Ala.1983); see also King Dev. & Realty, Inc. v. Eslami, 964 So.2d 51, 57 (Ala.Civ.App.2007). Section 6-6-280(b), Ala.Code 1975, pursuant to which the Bentleys sought to eject Pepper from the property, provides: “The plaintiff may recover in this action mesne -profits and damages for waste or any other injury to the lands, as the plaintiffs interests in the lands entitled him to recover, to be computed up to the time of the verdict.”
We cannot find any statute or case granting a trial court authority to award an attorney fee in an ejectment action absent a separate contractual provision permitting such an award, such as in a mortgage or lease agreement. Cf. Garrison v. Stanford, 586 So.2d 1, 3 (Ala.Civ.App.1991). Because no statutory authority authorizes such an award and because no contractual agreement permitting such an award exists between Pepper and the Bentleys, we must reverse the trial court’s award of an. attorney fee for the Bentleys.
Accordingly, the trial court’s award of an attorney fee is reversed. Pepper’s appeal from the trial court’s denial of her motion to stay execution of the judgment is dismissed. In all other respects, the trial court’s judgment is affirmed.
OPINION OF MAY 9, 2008, WITHDRAWN; OPINION SUBSTITUTED; *695 APPLICATION FOR REHEARING OVERRULED; AFFIRMED IN PART; REVERSED IN PART; AND APPEAL DISMISSED IN PART.
PITTMAN and THOMAS, JJ., concur.
THOMPSON, P.J., and MOORE, J., concur in part and concur in the result in part, with writings.
BRYAN, J., concurs in the result, without writing.

. A Rule 59 postjudgment motion "shall be filed not later than thirty (30) days after entry of the judgment.” See Rule 59(b) and (e). The 30th day after March 30, 2007 — the date the trial court entered its judgment — was Sunday, April 29th, 2007. Therefore, pursuant to Rule 6(a), Ala. R. Civ. P., Pepper had until Monday, April 30, 2007, to file her post-judgment motion.

. The Alabama Uniform Guardianship and Protective Proceedings Act, § 26-2A-1 et seq., Ala.Code 1975, also provides: "At any point in a proceeding, a court may appoint a guardian ad litem to represent the interest of a minor or other person if the court determines that representation of the interest otherwise would be inadequate.” § 26-2A-52, Ala. Code 1975. '

. Pepper cites federal cases to support her arguments that the phrase "not otherwise represented” in Rule 17(c) is not satisfied merely by representation by counsel and that, once an allegation of incompetency is raised, a determination as to competency is required. See, e.g., United States v. 30.64 Acres of Land, 795 F.2d 796, 806 (9th Cir.1986); Zaro v. Strauss, 167 F.2d 218, 220 (5th Cir.1948); Scannavino v. Florida Dep’t of Corr., 242 F.R.D. 662, 666 (M.D.Fla.2007). However, in light of our supreme court's decisions in Williams, Meriwether, and Helton, supra, Pepper's argument is misplaced. The authority Pepper relies on is not binding precedent, and we are not persuaded that we should depart from the established authority of this state.